Philip M. Guess, OSB #176408
Email: philip.guess@klgates.com
Elizabeth H. White, OSB #204729
Email: elizabeth.white@klgates.com
Alicia J. LeDuc, OSB #173963
Email: alicia.leduc@klgates.com
K&L GATES LLP
One SW Columbia Street, Suite 1900
Portland, OR 97204
Tel.: (503) 228-3200
Fax: (503) 248-9085

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| OREGON INTERNATIONAL AIR FREIGHT CO., an Oregon corporation; OIA GLOBAL LOGISTICS-SCM, INC., an Oregon corporation<br><br>Plaintiffs,<br><br>v.<br><br>HEIDI BASSANO; MARIE BOVEY; LLOYD BURKE; OLIVER BURKE; CHRISTOPHE ESAYIAN; KIMBERLY KOMACKI; MICHAEL LEHNERT; RAUL LUCENA; MIKE RIZZO; TODD SWEENEY; WILLIAM YANKOW; and DOES 1-20,<br><br>Defendants. | Case No.<br><br>COMPLAINT<br><br>**(Violations of the Economic Espionage Act, as amended by the Defend Trade Secrets Act, Breach of Employee Confidentiality Agreement and Obligations, Breach of Employee Handbook and Obligations, Breach of Duty of Loyalty, Conversion)**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs Oregon International Air Freight Co. and OIA Global Logistics-SCM, Inc. (Plaintiffs collectively referred to as "OIA Global"), by and through their attorneys, K&L Gates LLP, allege the following against Defendants Heidi Bassano, Marie Bovey, Lloyd Burke, Oliver Burke, Christophe Esayian, Kimberly Komacki, Michael Lehnert, Raul Lucena, Michael Rizzo, Todd Sweeney, William Yankow (collectively, "Defendants"), and Doe Defendants 1-20:

## INTRODUCTION

1.      Plaintiff OIA Global brings this action not by choice but out of necessity. Starting in September 2020, one of OIA Global's primary competitors Masterpiece International Limited, LLC ("Masterpiece International") launched a campaign to hire all or substantially all of OIA Global's employees in certain offices as well as individuals in other OIA Global offices located throughout the United States.  As a result of this campaign, Masterpiece International hired away more than 30 former OIA Global employees over the past 13 months.

2.      OIA Global, however, does not bring this action because of Masterpiece International's mere hiring of its employees.  In fact, OIA Global has not even named Masterpiece as a defendant in this action.  Instead, OIA Global brings this action because—despite Masterpiece International's repeated assurances it sought only employees and not competitive information—at least 11 former employees took steps to bring OIA Global's confidential information with them to their new employer.  While it is not possible to catalogue the litany of stolen material here, these former employees took information central to OIA Global's business: customer lists and contact information; customer and other sales pricing; copies of template documents; presentations containing OIA Global's internal financial and operational information; proprietary policy language; organizational charts; historical financial, customer, and booking data; customer and booking leads, etc.

3.      OIA Global takes the development and protection of its confidential information very seriously.  It has confidentiality agreements its employees, warns of protection of such information in its employee handbook, and maintains safeguards with respect to its confidential data.  OIA Global has also undertaken demands and legal action with respect to other employees

who have attempted to steal material, including securing preliminary and final injunctive relief.
This is because, as outlined below, the foundation of OIA Global's business is confidential
information regarding its business and its clients.

4.      Despite the former employees' contractual and other obligations, these individual
Defendants decided to take information, either independently or with encouragement, to
Masterpiece International.  Given that these employees have ignored their obligations, OIA
Global policy, and even letters sent after their departure, OIA Global has no alternative but to
bring a lawsuit to protect its information and to be compensated for its damages.  And, despite
Masterpiece International's assurances, to the extent OIA Global discovers a pattern of
Masterpiece International encouraging employees to use and/or bring confidential information
with them, OIA Global reserves the right to name Masterpiece International as a defendant at a
later date.

## PARTIES

5.      Plaintiff Oregon International Air Freight Co. is an Oregon corporation with its
headquarters at 2100 SW River Parkway #800, Portland, OR 97201.

6.      Plaintiff OIA Global Logistics-SCM, Inc. is an Oregon corporation with its
headquarters at 2100 SW River Parkway #800, Portland, OR 97201.

7.      Defendant Heidi Bassano was a Senior Regional Business Development Manager
at OIA Global who gave notice on May 6, 2021, and whose last day of employment at OIA
Global was May 8, 2021.  On information and belief, Bassano is a resident of Georgia.

8.      Defendant Marie Bovey was Director of Sales, Western Region at OIA Global
who gave notice on March 5, 2021, and whose last day of employment at OIA Global was March
9, 2021.  On information and belief, Bovey is a resident of California.

9.      Defendant Lloyd Burke was Global Accounts Manager at OIA Global who gave
notice on May 10, 2021, and whose last day of employment at OIA Global was May 11, 2021.
On information and belief, Lloyd Burke is a resident of Illinois.

10.     Defendant Oliver Burke was Air Export Coordinator at OIA Global who gave notice on June 16, 2021, and whose last day of employment at OIA Global was July 1, 2021.  On information and belief, Oliver Burke is a resident of Illinois.

11.     Defendant Christophe Esayian was Sustainability & Global Business Process Manager at OIA Global who gave notice on December 4, 2020 and whose last day of employment at OIA Global was December 15, 2020.  On information and belief, Esayian is a resident of Oregon.

12.     Defendant Kimberly Komacki was Senior Regional Business Development Manager at OIA Global who gave notice on September 3, 2020, and whose last day of employment at OIA Global was September 4, 2020.  On information and belief, Komacki is a resident of New York.

13.     Defendant Michael Lehnert was Chicago Export Coordinator at OIA Global whose last day of employment at OIA Global was September 2, 2021.  On information and belief, Lehnert is a resident of Illinois.

14.     Defendant Raul Lucena was an Entry Writer at OIA Global whose last day of employment at OIA Global was July 31, 2021.  On information and belief, Lucena is a resident of Illinois.

15.     Defendant Mike Rizzo was Branch Manager at OIA Global whose last day of employment at OIA Global was April 8, 2021.  On information and belief, Rizzo is a resident of Illinois.

16.     Defendant Todd Sweeney was Regional Vice President of the Americas - East at OIA Global who gave notice on June 18, 2021, and whose last day of employment at OIA Global was June 29, 2021.  On information and belief, Sweeney is a resident of Ohio.

17.     Defendant William Yankow was Director of LCL Consolidations at OIA Global whose last day of employment at OIA Global was June 11, 2021.  On information and belief, Yankow is a resident of Ohio.

18.     Doe Defendants 1-20, inclusive, on information and belief, were employees at OIA Global and/or Masterpiece International at all times relevant to this action and were under the same confidentiality obligations with respect to OIA Global's information and trade secrets, yet took such information with them either before or after leaving the employ of OIA Global and either before or upon commencing employment with Masterpiece International.  Plaintiff does not know the identities of Doe Defendants because, on information and belief, such employees took measures to conceal their theft of confidential information or trade secrets from OIA Global, including, but not limited to, through use of personal email addresses.  Such Doe Defendants shall be named as discovery in this matter reveals their identities and wrongdoing.

19.     Non-party Masterpiece International is a Delaware limited liability company with its headquarters and principal place of business at 39 Broadway, Suite 1410, New York, NY 10006.  Masterpiece International is an entity of interest in this case, given that it implemented an extensive effort to hire OIA Global's former employees, at least 11 of which engaged in wrongful conduct either prior to or after leaving OIA Global.  OIA Global reserves the right, after sufficient discovery related to these departed employees, to add Masterpiece International as a co-defendant in this matter.

## JURISDICTION AND VENUE

20.     Jurisdiction is proper in this Court under 28 U.S.C. § 1331 because OIA Global asserts claims arising under law of the United States

21.     Jurisdiction over OIA Global's state law claims is proper in this Court under 28 U.S.C. § 1367 because those claims are so related to OIA Global's federal claims that they form part of the same case or controversy.

22.     The Court has jurisdiction over Defendants because they each have done business in Oregon State and this District and OIA Global's claims arise out of those contacts, including Defendants' actions taken at or regarding OIA Global's headquarters in Portland, Oregon.  More specifically, Defendants' connections with the State of Oregon are as follows:

a.      OIA Global, which is headquartered in Portland, Oregon, employed Defendants;

b.      OIA Global's email archive is housed at a data center in Beaverton, Oregon;

c.      OIA Global's information technology staff, which handles email and other technological issues and concerns, is located in Portland, Oregon;

d.      OIA Global employees, including, on information and belief, Defendants, traveled to Oregon for work purposes such as annual and departmental meetings and joined calls and video conferences with individuals located in Oregon regarding OIA Global's business and strategy;

e.      Defendants reported either directly or indirectly to OIA individuals located in Oregon;

f.      OIA Global issues employee paychecks from its Portland, Oregon headquarters; and

g.      Confidentiality and other agreements executed with OIA Global employees are sent to and housed in OIA Global's Portland, Oregon headquarters.

23.     Venue is proper in this Court under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to OIA Global's claims occurred in this District.

## MATERIAL FACTS

**I.      OIA Global Is a Leading Global Logistics Services Provider Due to the Competitive Advantage Offered by Its Independently Derived Information**

**A.      OIA Global's Business**

24.     OIA Global is a leading third party logistics operator that provides services associated with global shipping, packaging, freight forwarding, and material sourcing for supply chains of all types and sizes from over 50 locations in 25 countries.  OIA Global's client base is comprised of major international companies, with substantial international and US-based transportation needs.

25.     The global logistics and transportation business is extremely competitive, comprised of both U.S.-based and international participants.  Worldwide volumes are substantial, but margins can be quite thin, meaning even small advantages—in customer information,

operations, pricing, and market intelligence—can be the difference in securing or retaining business.

**B.    The Importance of Information to OIA Global**

26.    Because market competition is intense in the logistics and transportation industry, information is among the most important, if not the most important, part of OIA Global's business.

27.    One key market advantage is information regarding OIA Global's actual and prospective customers, including information pertaining to which customers are shipping, what products those customers are shipping, customer volume, customer pricing, customer timing, and other similar customer-specific information.  OIA Global has accumulated and maintained customer information through participation in the marketplace—that is, by servicing clients, pitching (successfully and unsuccessfully) prospective clients, losing clients and then winning them back—and maintaining information relating to these activities in an internal database accessible to some OIA Global employees.  This decades-long process has provided OIA Global with a wealth of valuable business knowledge.  Given the enormous time, effort, and expense spent preparing this information, this information is invaluable to any competitor, as it would permit them to quickly identify prospective targets without investing the resources necessary to do so.  Moreover, because this information allows OIA Global to more efficiently and effectively analyze customer needs, it would be invaluable to any competitor.

28.    This customer-specific information also includes OIA Global's confidential list of customers, as well as those customers' individualized supply chain information, such as factory locations and contacts, customer open order reports, customer product lists and pricing information, consumption reports, and savings reports.  OIA Global derived this information through decades of effort and would be impossible to replicate without the expenditure of substantial resources.  As a consequence, these customer lists (and the customer-specific information contained in them) are highly valuable to OIA Global and would be invaluable to

any competitor as it would permit that competitor to quickly identify prospective targets without the requisite investment of time, energy, and cost.

        **C.**      **OIA Global's Efforts to Protect Business Information**

      29.      Because its information and proprietary processes are central to OIA Global's business, OIA Global undertakes significant and substantial steps to protect its information and processes.

      30.      OIA Global maintains its confidential files—including its customer lists, client files, and other proprietary documents—on a centralized, secure file server. Electronic access to the contents of OIA Global's file server is restricted, with the server requiring Active Directory level authentication. Additionally, access to OIA Global's file servers is logged, allowing OIA Global to verify that its files are being utilized by authorized users. Physical access to OIA Global's central file servers is also restricted, as these servers are located off-site, within the custody of a third-party vendor. OIA Global maintains strict confidentiality agreements with this vendor, tightly controlling physical access to these servers.

      31.      To secure its valuable information, OIA Global password-protects the laptops issued to its employees, providing each user with a unique login and password. Each user account may have different access permissions, depending on the user's requirements, ensuring that employees have access only to the types of information that are necessary to perform their individual job functions.

      32.      Additionally, as part of its efforts to maintain the security of its proprietary information, OIA Global has a policy to maintain an inventory of its equipment, including the computers issued to its employees. When an employee is terminated or terminates his or her employment, OIA Global's policy is for the IT department to confiscate the computer, offer its access to the employee's manager, archive all relevant files and programs to back folders on OIA Global's servers, and either reformat it (thereby removing all information) or remove all information for reuse or recycle.

33.     In addition to OIA Global's electronic and physical safeguards for its information, it also maintains strict written policies and procedures with respect to the use of OIA Global's information.  For example, its Employee Handbook details the treatment of and access to confidential OIA Global information.

## II.     Defendants Agreed When They Were Hired by OIA Global to Maintain the Confidentiality of OIA Global's Information

### A.     Employee Confidentiality Agreements Required Employees to Use OIA Global's Information Only to Support OIA Global

34.     In light of the proprietary and confidential nature of the information employees use and access during their employment, OIA Global required many employees to sign an "Employee Confidentiality Agreement" ("Confidentiality Agreement").

35.     This Confidentiality Agreement stated in no uncertain terms that OIA Global's proprietary and confidential information "is and shall continue to be the exclusive property of OIA, whether or not prepared in whole or in part by me and whether or not disclosed or entrusted to me in connection with my work for OIA."

36.     The Confidentiality Agreement further covenanted employees to "agree not disclose Confidential Information, directly or indirectly, under any circumstances or by any means, to any third person without the express written consent of OIA" and that the employees would "not copy, transmit, reproduce, summarize, quote, *or make any commercial or other use whatsoever of Confidential Information, except as may be necessary to perform my duties for OIA*."  (emphasis added)

37.     Employees signing the Confidentiality Agreement acknowledged that disclosure of OIA Global's information could cause irreparable harm to OIA Global and that failure to abide by the Confidentiality Agreement would entitle OIA Global to, *inter alia*, a preliminary injunction and a judgment for damages caused by any breach.  Employees also agreed that "[i]f any suit or action arising out of or related to this Agreement is brought by any party, the prevailing party or parties shall be entitled to recover the costs and fees (including without

limitation any reasonable attorney fees . . .) incurred by such party or parties in such suit or action[.]"

38.    Employees signing the Confidentiality Agreement further agreed they would return any confidential information "[u]pon termination of my employment . . . that may be in my possession or under my control."

39.    The duration of the Confidentiality Agreement was to "continue beyond the term of employment by OIA and for as long as I possess Confidential Information."  In other words, employees must protect and not misuse OIA Global's information both while employed and after their employment ended, regardless of cause.

40.    Finally, employees presented with the Confidentiality Agreement were notified as follows:

> CAUTION TO EMPLOYEE: THIS AGREEMENT AFFECTS IMPORTANT RIGHTS.
> DO NOT SIGN IT UNLESS YOU HAVE READ IT CAREFULLY, AND ARE
> SATISFIED THAT YOU UNDERSTAND IT COMPLETELY.

41.    Employees also received an Employee Handbook upon commencing employment with OIA Global.  Upon receipt of the Employee Handbook, most employees signed an Acknowledgement & Receipt of Handbook ("Handbook Acknowledgement").  As part of that Handbook Acknowledgement, employees understood and accepted that they were "responsible for reading, understanding, and adhering to the policies outlined in the Employee Handbook."

42.    The Employee Handbook listed the "[d]isclosure of business information of a confidential nature to unauthorized persons," "[t]heft or misuse of Company property, such as equipment, inventory, supplies or cash," "[d]ishonesty," and "[d]efrauding the Company" as express "examples of conduct that are unacceptable and will lead to disciplinary action[.]"

43.    The Employee Handbook's Information Systems Policy also set forth clear policies governing employee use of the OIA Global's computer system, phone system, e-mail system, and internet access, collectively the "Company Systems."  The Employee Handbook "User Guidelines" provide that "[a]ll data files or messages created and stored on the Company

Systems, including personal matters, are the property of the Company . . . . All users must be careful to avoid disclosing confidential or sensitive information of the Company or clients[.]" Further, "[t]he Company Systems are *an asset of the Company*. **All files and messages on them are records and property of the Company.**"  (emphasis added)

44.     The Employee Handbook also identified "Specifically Prohibited Practices" noting the following practices were "**specifically forbidden: . . . copying and providing sensitive information of the Company or clients to third parties without a need to know;** . . . using the Company Systems to promote or endorse personal, political or religious causes, or for commercial gain; [and] bypassing security mechanisms[.]"  (emphasis added)

45.     The Employee Handbook also specifically instructs employees to avoid conflicts of interest, noting that personal "involvement with a competitor, supplier, or subordinate employee of the Company, which impairs an employee's ability to exercise good judgment *on behalf of the Company*, creates an actual or potential conflict of interest."  (emphasis added) Employees were directed to "immediately and fully disclose the relevant circumstances to his/her immediate supervisor or any other appropriate supervisor, for determination as to whether a potential or actual conflict exists."  "Working for a competitor" was identified as an example of a conflict of interest.  Employees were also asked to "return all Company property at the time you leave" employment with OIA Global.

**B.     Employees With Access to OIA Global's Confidential and Proprietary Information Owed OIA Global Duties of Loyalty, Confidentiality, and Good Faith and Fair Dealing**

44.     Independent of any contractual duties to their employer, Defendants owed a duty of confidentiality, loyalty, and good faith and fair dealing to OIA Global.  In their roles as agents and/or employees, Defendants owed OIA Global a duty and obligation to act in OIA Global's interest.

45.     In their roles, Defendants also owed OIA Global a duty not to usurp OIA Global's business opportunities, which would include relationships with clients and customers, not to use

OIA Global confidential and proprietary information in furtherance of a competitor's business,

and not to use OIA Global's confidential and proprietary information for Defendants' own gain.

III.   **Defendants' Theft and Misuse of OIA Global's Proprietary Information and Simultaneous Employment with Masterpiece International**

A.   **Theft and Misuse of OIA Global Information Using Personal and Masterpiece International Email Accounts**

46.     Masterpiece International's campaign to hire OIA Global employees gained

traction beginning in late 2020 and continuing into 2021.  OIA Global employees who departed

for Masterpiece International subsequently recruited former OIA Global colleagues to

Masterpiece International.  Several OIA Global employees used their OIA Global-issued email

accounts for such communications, including the receipt of job offers from Masterpiece

International, setting meetings regarding "Next steps" with Masterpiece International, engaging

in communications reflecting Masterpiece International raiding of OIA Global's customer base

as more OIA Global personnel were recruited, and encouraging other OIA Global employees to

move to Masterpiece International.

47.     In a number of cases, on or around the date of Defendants' departure from OIA

Global, Defendants undertook to steal confidential and proprietary information. Defendants

primary (but certainly not only) means of procuring information was to email material to their

personal email addresses or, in some cases, to Masterpiece International email addresses that had

already been created for them (even though they still worked for OIA Global).  On information

and belief, former OIA Global employees forwarded such information—with or without

Masterpiece International's knowledge—to benefit themselves and an OIA Global competitor.

These individuals took such action in explicit violation of the agreements these Defendants had

signed upon employment with OIA Global.  Such information theft provided no conceivable

benefit to OIA Global and could only harm it, by diverting proprietary information, customers,

or both, to a direct competitor.

48.     Such theft included, but is not limited to, that which is detailed as follows:

a.  **Heidi Bassano:**  Former OIA Global employee Bassano signed the OIA Global
     Confidentiality Agreement on April 5, 2014, and the Employee Handbook
     Acknowledgement on April 5, 2014, thereby committing to safeguard OIA
     Global's information and to use it only in furtherance of her position at OIA
     Global.  Yet Defendant Bassano, whose final day of employment at OIA Global
     was May 8, 2021, emailed to what is, on information and belief, her personal
     email account, a detailed spreadsheet regarding shipping data for an OIA Global
     client on May 6, 2021.

b.  **Marie Bovey:**  Former OIA Global employee Bovey signed the OIA Global
     Confidentiality Agreement on November 1, 2011, and the Employee Handbook
     Acknowledgement on November 1, 2011, thereby committing to safeguard OIA
     Global's information and to use it only in furtherance of her position at OIA
     Global.  Yet on March 10, 2021, Bovey forwarded to what is, on information and
     belief, her personal email account, an email and attachments from July 8, 2019,
     that included two PowerPoint presentations regarding OIA Global's energy
     business and sales presentations and marketing information.  The presentations
     included details about profit margins and customers and provided an overview of
     OIA Global's operations.

c.  **Lloyd Burke:**  Former OIA employee Lloyd Burke, on his penultimate day of
     employment at OIA Global May 10, 2021, Defendant Lloyd Burke sent from his
     OIA Global email account to a Masterpiece International account,
     lburke@masterpieceintl.com, information and documents related to an OIA
     Global customer account.  Such use of OIA Global's information could only have
     been for improper commercial use at Masterpiece International.  Burke further
     forwarded OIA Global documents to what is, on information and belief, his
     personal email account, in the days leading up to his departure from OIA Global.

d.  **Oliver Burke:**  Former OIA employee Oliver Burke signed the Employee

Handbook Acknowledgement on January 24, 2011, thereby committing to

safeguard OIA Global's information and to use it only in furtherance of his

position at OIA Global.  Yet on June 10, 2021, less than a month prior to his

departure from OIA Global and mere days before giving notice, Defendant Oliver

Burke sent to what is, on information and belief, his personal email account, an

attachment that included an amalgamation of several confidential and proprietary

provisions from OIA Global documents relating to cargo rates, surcharges, tariffs,

and the shipping industry.  The document contained excerpts and contract clauses

which OIA Global had extensively developed over time to use in executing its

business strategy and operating procedures.  The purpose of Defendant Oliver

Burke sending such information to his own email address mere days before his

departure from OIA Global could only have been to use such information

competitively upon joining Masterpiece International to replicate or undercut the

contract terms and operating procedures OIA Global uses to differentiate itself in

the marketplace.

e.  **Christophe Esayian**:  Former OIA Global employee Esayian signed the OIA

Global Confidentiality Agreement on May 19, 2014, thereby committing to

safeguard OIA Global's information and to use it only in furtherance of his

position at OIA Global.  Yet in the days prior to his last day at OIA Global on

December 15, 2020, Defendant Esayian forwarded to what is, on information and

belief, his personal email address, a number of OIA Global confidential and

proprietary documents, including a proposal for carbon neutral aviation shipping

and associated spreadsheet, correspondence with current OIA Global clients, a

lighting cost proposal, a client EDI analysis, and notes from an OIA Global

steering group meeting regarding technology implementation at OIA Global.

Defendant Esayian's theft of confidential OIA Global documents related to

customers and OIA Global's sustainability measures, taken contemporaneous to his employee departure from OIA Global, could have had no other purpose than to improperly utilize information from those documents in order to support Masterpiece International to the detriment of OIA Global.

f.  **Kimberly Komacki**:  Former OIA Global employee Komacki signed the OIA Global Confidentiality Agreement on December 10, 2012, and the Employee Handbook Acknowledgement on December 10, 2012, thereby committing to safeguard OIA Global's information and to use it only in furtherance of her position at OIA Global.  Yet in the weeks and days prior to her last day at OIA Global on September 4, 2020, Defendant Komacki forwarded to what is, on information an belief, her personal email address, a number of OIA Global confidential and proprietary documents, including a Shipment Profile Report for clients which contained all data and shipping information for those clients in the OIA Global system; a 48-page customer relationship management "Comprehensive Guide;" a booking report; a list of customer inquiries, opportunities, and communications dating back to February 2018 apparently downloaded from OIA Global's data system; and an "Enterprise Growth Task" spreadsheet.

g.  **Michael Lehnert:**  Former OIA Global employee Lehnert, in the days leading up to his last day at OIA Global on September 2, 2021, sent to what is, on information and belief, his personal email account, confidential OIA Global documents.  These confidential documents included several bills of lading for an OIA Global customer, Valent Biosciences LLC, and at least one other OIA Global customer.  On or about September 7, 2021, just days after Defendant Lehnert departed OIA Global, at least two Valent Biosciences shipments were rebooked with Masterpiece International, instead of OIA Global as had been done previously.  Defendant Lehnert's theft of confidential OIA Global documents

relating to a customer, taken contemporaneously to his departure from OIA Global, could have had no other purpose than to improperly utilize information from those documents in order to move business from OIA Global to Masterpiece International, which is precisely what happened.

h. **Raul Lucena:** Former OIA Global employee Lucena, the day following his receipt of an offer to join Masterpiece International, sent to what is, on information and belief, his personal email account, a detailed spreadsheet regarding airlines, including rate and contact information. This spreadsheet contained OIA Global's internal pricing for particular vendors and suppliers, including specific volume and customer profile data, used by OIA Global in issuing competitive shipping quotes. The purpose of sending such a document to his own email address following his receipt of a job offer from Masterpiece International and mere weeks before his departure from OIA Global could only have been to leverage this extensive information in his new position on behalf of Masterpiece International, as such information would have allowed the user to sidestep months of preparatory work in aggregating market data and allowed the user to usurp the market advantage OIA Global developed by competitively quoting against OIA Global using OIA Global's own information. Further, while still employed at OIA Global, Defendant Lucena corresponded with a Masterpiece International employee regarding FDA codes to aid Masterpiece International in converting an OIA Global client to Masterpiece International.

i. **Mike Rizzo:** Former OIA Global employee Rizzo signed the Employee Handbook Acknowledgement on September 22, 2005, thereby committing to safeguard OIA Global's information and to use it only in furtherance of his position at OIA Global. Yet in the days leading up to his departure in early April 2021, Defendant Rizzo sent to what is, on information and belief, his personal email account, multiple OIA Global documents, including a Job Profit Exception

Report regarding "Jobs with Excess Profits" identifying specific OIA Global client accounts with high profit margins, customer lists and invoices, lists of OIA Global personnel including a detailed chart of OIA Global employees and the client accounts for which those employees were responsible, blank templates of OIA Global documents, and spreadsheets showing various fees and other information for customers OIA Global companies.  The purpose of Defendant Rizzo sending such documents to his own email address mere days before his departure from OIA Global could only have been to use such information competitively upon joining Masterpiece International to target high-margin OIA Global client accounts for conversion to Masterpiece International clients.

j.   **Todd Sweeney:**  Former OIA Global employee Sweeney signed the OIA Global Confidentiality Agreement on September 29, 2011, and the Employee Handbook Acknowledgement on September 29, 2011, thereby committing to safeguard OIA Global's information and to use it only in furtherance of his position at OIA Global.  Yet in the days leading up to his departure in late June 2021, Defendant Sweeney sent to what is, on information and belief, his personal email account, multiple OIA Global documents, including a detailed organizational chart of OIA Global employees who opened a new office in the prior months, confidential employee agreements, and information on potential job candidates that OIA Global had obtained through relationships with its outside recruiting vendors. The purpose of sending such documents to his own email address mere days before his departure from OIA Global could only have been to use such information competitively upon joining Masterpiece International, including to replicate OIA Global's organization, which is key to its success in the industry, and to divert qualified candidates from OIA Global to Masterpiece International.

k.   **William Yankow:**  Former OIA Global employee Yankow signed the OIA Global Confidentiality Agreement on November 13, 2012, thereby committing to

safeguard OIA Global's information and to use it only in furtherance of his position at OIA Global.  At the time of his departure from OIA Global, Defendant Yankow had non-compete agreement, and currently has an active non-solicitation agreements in place with OIA Global.  Yet in April 2021, Defendant Yankow was using his OIA Global email address, and, on information and belief, what is his personal email address, to engage in "Next steps" meeting discussions with Masterpiece International.  By early May 2021, Defendant Yankow was negotiating changes to his employment agreement with OIA Global to reduce his non-competition time period.  During this April-May 2021 time frame, Defendant Yankow was forwarding OIA Global emails and information to what is, on information and belief, his personal email account.  These documents included but were not limited to a list of 50 customers that OIA Global was targeting for a growth initiative, including details as to the customers' margins OIA Global's revenue from the customers, how many jobs the customers booked with OIA Global over a three-month period, and more.  Another document listed detailed information about jobs completed, customers served, recognized revenues and costs, and other proprietary and confidential information belonging to OIA Global for an *eight-year period*.  This time period approximately corresponds to the time Defendant Yankow was employed with OIA Global after his family's business International Transport Services ("ITS") was acquired by OIA Global in 2012. OIA acquired ITS in part owing to ITS's capacity for less than container load ("LCL") capabilities in Asia.  Both Defendant Yankow and his brother Matt Yankow were employed with OIA Global after the ITS acquisition.  However, Matt Yankow recently left OIA Global and went to work at Masterpiece International.  Defendant Yankow also recently left OIA Global, and forwarded to his personal email account from his OIA Global account detailed LCL data from OIA Global, thereby stealing from OIA Global the strategic LCL information

which caused OIA Global to acquire Defendant Yankow's ITS business in the first instance. Defendant Yankow departed OIA Global on June 11, 2021, and on information and belief, resides in Ohio. Masterpiece International registered to do business in Ohio just two weeks later on June 25, 2021. On information and belief, Defendant Yankow began working with or for Masterpiece International near the time of his departure from OIA Global, and took OIA's LCL data and other proprietary information contemporaneous to his departure from OIA Global for no other purpose than to improperly utilize information from those documents in order to move business from OIA Global to a competing business.

l.    Doe Defendants 1-20, whose identities have not yet been discovered, and who had signed Confidentiality Agreements with OIA Global, signed Employee Handbook Acknowledgements with OIA Global, or otherwise had confidentiality obligations, stole proprietary and confidential OIA Global information at or near the time of their departure for use in their new roles at Masterpiece International. Such theft was to the benefit of Masterpiece International and to the detriment of OIA Global and included efforts to siphon customers and otherwise use confidential information to compete with OIA Global.

**B.  Defendants' Divided Loyalties While Working for Both OIA Global and Masterpiece International**

49.    In some cases, on information and belief, OIA Global employees were already working for Masterpiece International while still employed by OIA Global. In such cases, these employees had operational Masterpiece International email addresses *at the same time* they were working for OIA Global:

a.    Defendant Lehnert already had a Masterpiece International email address at least as early August 23, 2021, the very same day he resigned from OIA Global. This email address was known to and being used by customers of Masterpiece International before Defendant Lehnerts's employment at OIA Global had ended.

On information and belief, Defendant Lehnert was already working for or supporting Masterpiece International, a competitor of OIA Global, before his OIA Global employment concluded. Defendant Lehnert was not the only OIA Global employee who was onboarding at Masterpiece International before departing OIA Global. Philip Dea, another OIA Global employee who left OIA Global on August 20, 2021, for Masterpiece, likewise had a Masterpiece International email address that was receiving communications while he was still on OIA Global's payroll. Dea and Defendant Lehnert received emails together at their Masterpiece International accounts while still employed at OIA Global.

b.  Defendant Lloyd Burke already had a Masterpiece International email address at least as early as May 10, 2021, the day he gave notice to OIA Global and his penultimate day working for OIA Global. Moreover, Defendant Lloyd Burke sent at least one email and document to his Masterpiece International email address while he was still working for OIA Global. On information and belief, Defendant Lloyd Burke was already working for or supporting Masterpiece International, a competitor of OIA Global, before his OIA Global employment concluded.

c.  Doe Defendants 1-20, whose identities have not yet been discovered, began work for Masterpiece International prior to departing from OIA Global, thus competing with their soon-to-be former employer while still employed at OIA Global. Working for two entities at once prevented Doe Defendants 1-20 from being loyal to and working in the interests of OIA Global.

## COUNT I
### (Violation of the Economic Espionage Act, as Amended by the Defend Trade Secrets Act, as to all Defendants and Doe Defendants 1-20)

50.     OIA Global realleges and incorporates by reference the foregoing paragraphs of the Complaint as though fully set forth herein.

51.     During and following their employment with OIA Global, Defendants Bassano, Bovey, Lloyd Burke, Oliver Burke, Esayian, Komacki, Lehnert, Lucena, Rizzo, Sweeney,

Yankow, and Doe Defendants 1-20 misappropriated OIA Global's trade secrets related to products and services used in and intended for use in interstate commerce. OIA Global took reasonable efforts to maintain the secrecy of its information, including training, confidentiality agreements, limiting access, and password protection. Defendants misappropriated those trade secrets and have received, possessed, and benefitted from them, knowing such trade secrets were obtained without authorization. The information that Defendants misappropriated constitutes trade secrets protected by the Economic Espionage Act, as Amended by the Defend Trade Secrets Act, 18 U.S.C. § 1831 et seq.

52.    Defendants' misappropriation of OIA Global's trade secrets was willful and malicious. OIA Global is thus entitled to its reasonable attorneys' fees, and to exemplary damages in an amount up to twice actual damages awarded, pursuant to 18 U.S.C. § 1836.

53.    As a direct consequence of Defendants' misappropriation, Defendants have been unjustly enriched, and OIA Global is entitled to damages for such enrichment, in an amount to be proven at trial.

**COUNT II**
**(Breach of Employee Confidentiality Agreement as to**
**Defendants Bassano, Bovey, Esayian, Komacki, Sweeney, Yankow**
**and Doe Defendants 1-20)**

54.    OIA Global realleges and incorporates by reference the foregoing paragraphs of the Complaint as though fully set forth herein.

55.    Defendants Bassano, Bovey, Esayian, Komacki, Sweeney, Yankow, and Doe Defendants 1-20 executed Confidentiality Agreements with OIA Global that imposed certain obligations, including the safeguarding of OIA Global information and the covenant not to misuse OIA Global information for commercial or competitive purposes not in furtherance of OIA Global's business, both during Defendants' employment with OIA Global and thereafter.

56.    These Confidentiality Agreements notified Defendants that they were agreeing to certain covenants and would face consequences for the breach of such covenants.

57.     Defendants materially breached their duties under these Confidentiality Agreements by stealing OIA Global's confidential and proprietary information, including OIA Global's customer information and pricing, customer quotes, OIA Global documents, and OIA Global organizational charts, and sending it either to Defendants' personal email addresses or to Masterpiece International email addresses for use by and for the benefit of Masterpiece International, a competitor of OIA Global.

## COUNT III
### (Breach of Employee Handbook Acknowledgement as to Defendants Bassano, Bovey, Oliver Burke, Komacki, Rizzo, Sweeney, and Doe Defendants 1-20)

58.     Defendants Bassano, Bovey, Oliver Burke, Komacki, Rizzo, Sweeney, and Doe Defendants1-20 each signed Handbook Acknowledgements upon being hired by OIA Global.

59.     Defendants each received adequate consideration to support the Handbook Acknowledgement, as it was a condition of their employment.

60.     Defendants materially breached this agreement by obtaining and using OIA Global's proprietary and confidential information, including OIA Global's customer information and pricing, customer quotes, OIA Global documents, and OIA Global organizational charts, in furtherance of Masterpiece International's business and to the detriment of OIA Global's business.

## COUNT IV
### (Breach of Duties of Loyalty, Confidentiality and Good Faith and Fair Dealing as to All Defendants and Doe Defendants 1-20)

61.     OIA Global realleges and incorporates by reference the foregoing paragraphs of the Complaint as though fully set forth herein.

62.     During their employment with OIA Global, Defendants owed a duty of loyalty, confidentiality, and good faith and fair dealing to OIA Global.

63.     During their employment with OIA Global, Defendants breached these duties at least by stealing OIA Global's trade secrets and other confidential and proprietary information,

including customer information and pricing, customer quotes, OIA Global documents, and OIA Global organizational charts, in order to further their own interests and those of OIA Global's competitors, specifically Masterpiece International, and in direct conflict with OIA Global's interests.

**COUNT V**
**(Conversion as to all Defendants and Doe Defendants 1-20)**

64.    OIA Global realleges and incorporates by reference the foregoing paragraphs of the Complaint as though fully set forth herein.

65.    Defendants intentionally exercised dominion or control over or dispossessed, used, deleted or intermeddled with OIA Global's chattel, including but not limited to, OIA Global's customer information and pricing, customer quotes, OIA Global documents, OIA Global organizational charts, and other confidential and proprietary client information for the benefit of Defendants.  Defendants may also have converted and dispossessed, used, deleted or intermeddled with other items that will be discovered after commencement of litigation through the discovery process.

WHEREFORE, OIA Global prays for a judgment and decree in its favor and against the Defendants as follows:

a)    Permanent orders, and possible preliminary relief, requiring Defendants to deliver to OIA Global all documents, data, and other property of OIA Global, as well as all hard drives, flash drives, SD cards, cell phones, and other external drives or storage media used by any defendant that contain any of OIA Global's documents, data or other property (collectively "Misappropriated ESI"). Defendants shall not take any action to delete, destroy, or move any documents, data or other property of OIA Global in Misappropriated ESI, and shall not direct or permit anyone to do so on their behalf;

b)      Permanent orders, and possible preliminary relief, restraining and enjoining Defendants from soliciting OIA Global's clients, potential clients, vendors, employees and suppliers, to the extent such solicitation is enabled by or based on misappropriation of OIA Global's trade secrets and other confidential information;

c)      Permanent orders, and possible preliminary relief, restraining and enjoining Defendants from otherwise possessing, using or disclosing OIA Global's trade secrets and other confidential information misappropriated by Defendants;

d)      An accounting from Defendants;

e)      Judgment against Defendants for damages in an amount to be proven at trial;

f)      Judgment against Defendants for double damages for their willful and malicious misappropriation of OIA Global's trade secrets pursuant to 18 U.S.C. § 1836;

g)      Judgment against Defendants in the amount of OIA Global's reasonable attorneys' fees and costs as authorized by 18 U.S.C. § 1836 and/or pursuant to the terms of the Confidentiality Agreements; and

h)      Such other and further relief as this Court deem just and equitable.

DATED this 8th day of October 2021.

K&L GATES LLP

By:   *Philip M. Guess*

Philip M. Guess, OSB #176408
Email: philip.guess@klgates.com
Elizabeth H. White, OSB #204729
Email: elizabeth.white@klgates.com
Alicia J. LeDuc, OSB #173963
Email: alicia.leduc@klgates.com

*Attorneys for Plaintiffs Oregon International Air Freight Co., an Oregon corporation and OIA Global Logistics-SCM, Inc., an Oregon Corporation*

Page 24 – COMPLAINT
505193971.1