Courtney Angeli, OSB No. 941765 (Lead Counsel)
E-mail: courtney@baaslaw.com
Kristine Lambert, OSB No. 010684
E-mail: kristine@baaslaw.com
BUCHANAN ANGELI ALTSCHUL
& SULLIVAN LLP
921 SW Washington Street, Suite 516
Portland, OR 97205
Telephone: (503) 974-5015

*Attorneys for Defendant*
*Christophe Esayian*

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

### PORTLAND DIVISION

| | |
|---|---|
| OREGON INTERNATIONAL AIR FREIGHT CO., an Oregon corporation; OIA GLOBAL LOGISTICS-SCM, INC., an Oregon corporation<br><br>        Plaintiffs,<br><br>  v.<br><br>HEIDI BASSANO; MARIE BOVEY; LLOYD BURKE; OLIVER BURKE; CHRISTOPHE ESAYIAN; KIMBERLY KOMACKI; MICHAEL LEHNERT; RAUL LUCENA; MIKE RIZZO; TODD SWEENEY; WILLIAM YANKOW; and DOES 1-20,<br><br>        Defendants. | Case No. 3:21-cv-01480-SB<br><br>DEFENDANT CHRISTOPHE ESAYIAN'S ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS TO PLAINTIFFS' COMPLAINT |

In Answer to plaintiffs' Complaint, defendant Christophe Esayian ("Mr. Esayian") admits, denies, and avers as follows. Except as expressly admitted, Mr. Esayian denies each and every allegation set forth in plaintiffs' Complaint and the whole thereof.

**1.**

Mr. Esayian denies that OIA had no choice but to bring this lawsuit as alleged in paragraph 1 of the Complaint. Mr. Esayian is without knowledge as to the remaining allegations in paragraph 1 and therefore denies same.

**2.**

Mr. Esayian denies that he took steps to take confidential information with him from OIA Global to Masterpiece International as alleged in paragraph 2. Mr. Esayian is without knowledge as to the remaining allegations in paragraph 2 and therefore denies same.

**3.**

Mr. Esayian is without knowledge as to the allegations in paragraph 3 and therefore denies same.

**4.**

Mr. Esayian denies that he took steps to take confidential information with him from OIA Global to Masterpiece International as alleged in paragraph 4. Mr. Esayian further denies that OIA Global is entitled to any compensation or damages. Mr. Esayian is without knowledge as to the remaining allegations in paragraph 4 and therefore denies same.

**5.**

Mr. Esayian admits the allegations of paragraphs 5.

**6.**

Mr. Esayian is without knowledge as to the allegations of paragraph 6 and therefore denies same.

**7.**

Mr. Esayian is without knowledge as to the allegations in paragraphs 7 through 10 and therefore denies same.

**8.**

Mr. Esayian admits that he held the position of Sustainability and Global Business Process Manager prior to his resignation from OIA Global and that he gave notice of his resignation on December 4, 2020. Mr. Esayian admits that OIA Global did not pay him for work performed on OIA Global's behalf after December 15, 2020, however Mr. Esayian denies that his last day of work was December 15, 2020. Mr. Esayian further admits he is a resident of Oregon. Mr. Esayian denies the remaining allegations of paragraph 11.

**9.**

Mr. Esayian is without knowledge as to the allegations in paragraphs 12 through 18 and therefore denies same.

**10.**

On information and belief, Mr. Esayian admits that Masterpiece International is a company with its headquarters in New York as alleged in paragraph 19. Mr. Esayian is without knowledge as to the remaining allegations in paragraph 19 and therefore denies same.

**11.**

Mr. Esayian admits that jurisdiction is proper in this court as alleged in paragraphs 20 through 21.

**12.**

Mr. Esayian admits that jurisdiction is proper as to him, but is without knowledge as to the remaining allegations of paragraph 22 and therefore denies same.

**13.**

Mr. Esayian admits that venue is proper as alleged in paragraph 23.

**14.**

Mr. Esayian denies the allegations in the heading of Section I and Section I.A to the extent either one purports to make an affirmative statement that merits a response.

**15.**

Mr. Esayian admits that OIA Global provides logistic sand transportation services as alleged in paragraph 24. Mr. Esayian is without knowledge as to whether OIA Global considers itself a "leading" provider of these services nor does he have knowledge about OIA Global's client's needs and therefore he denies this and all remaining allegations of paragraph 24.

**16.**

Mr. Esayian is without knowledge as to the allegations in paragraph 25 and therefore denies same.

**17.**

Mr. Esayian denies the allegations in the heading of Section I.B to the extent it purports to make an affirmative statement that merits a response.

**18.**

Mr. Esayian is without knowledge as to the allegations in paragraphs 26 through 28 and therefore denies same.

**19.**

Mr. Esayian denies the allegations in the heading of Section I.C to the extent it purports to make an affirmative statement that merits a response.

**20.**

Mr. Esayian is without knowledge as to the allegations in paragraphs 29 through 33 and therefore denies same.

**21.**

Mr. Esayian denies the allegations in the heading of Section II and Section II.A to the extent either one purports to make an affirmative statement that merits a response.

**22.**

Mr. Esayian is without knowledge as to the allegations in paragraph 34 and therefore denies same.

**23.**

Mr. Esayian states that the Employee Confidentiality Agreement speaks for itself and therefore he neither admits nor denies plaintiffs' conclusions and characterizations of it as found in paragraphs 35 through 40. Mr. Esayian is without knowledge as to the remaining allegations in paragraphs 35 through 40 and therefore denies same.

**24.**

Mr. Esayian is without knowledge as to whether all or other employees received an Employee Handbook or signed any documents related to the Employee Handbook including an Acknowledgement & Receipt of Handbook as alleged in paragraph 41. These documents, to the extent they exist, speak for themselves and therefore Mr. Esayian neither admits nor denies

plaintiffs' conclusions or characterizations related to them. Mr. Esayian is without knowledge as to the remaining allegations in paragraph 41 and therefore denies same.

**25.**

Mr. Esayian states that the Employee Handbook speaks for itself and therefore he neither admits nor denies plaintiffs' conclusions or characterizations related to it as found in paragraphs 42 through 45.

**26.**

Mr. Esayian denies the allegations in the heading of Section II.B to the extent it purports to make an affirmative statement that merits a response.

**27.**

Mr. Esayian states that the allegations in misnumbered, repeated paragraph 44 consist of legal arguments and legal conclusions that do not call for a response. Mr. Esayian denies the remaining allegations of misnumbered, repeated paragraph 44.

**28.**

Mr. Esayian states that the allegations in misnumbered, repeated paragraph 45 consist of legal arguments and legal conclusions that do not call for a response. Mr. Esayian denies the remaining allegations of misnumbered, repeated paragraph 45.

**29.**

Mr. Esayian denies the allegations in the heading of Section III and Section III.A to the extent either one purports to make an affirmative statement that merits a response.

**30.**

Mr. Esayian denies he was aware of or involved in any campaign to hire OIA Global employees as alleged in paragraph 46. Mr. Esayian is without knowledge as to the remaining allegations in paragraph 46 and therefore denies same.

**31.**

Mr. Esayian denies he retained or took any confidential information to benefit himself or any OIA Global competitor. Mr. Esayian is without knowledge as to the remaining allegations in paragraph 47 and therefore denies same.

**32.**

With regard to paragraph 48, Mr. Esayian admits that he signed the OIA Global Confidentiality Agreement on May 19, 2014. Mr. Esayian further admits that for the sole and only purpose of continuing to perform useful and necessary work for OIA Global beyond December 15, 2020 and with the full knowledge of OIA Global management, he forwarded certain materials to his personal email so he could continue to perform work for OIA Global including work necessary for to allow a seamless transition for his successor and to assist with the ongoing audit project he had been handling for OIA Global prior to his termination and other projects as needed. Mr. Esayian denies that he engaged in theft of confidential information. Mr. Esayian further denies that he improperly utilized any OIA Global information or that he provided it to Masterpiece International. Mr. Esayian denies all other allegations and characterizations of his actions as alleged in paragraph 48. Mr. Esayian is without knowledge as to all remaining allegations in paragraph 48 and therefore denies same.

**33.**

Mr. Esayian denies the allegations in the heading of Section III.B to the extent it purports to make an affirmative statement that merits a response.

**34.**

Mr. Esayian is without knowledge as to the allegations in paragraph 49 and therefore denies same.

<u>**COUNT I**</u>
**(Violation of the Economic Espionage Act, as Amended by the Defend Trade Secrets Act, as to all Defendants and Doe Defendants 1-20)**

**35.**

Mr. Esayian incorporates his responses to the foregoing paragraphs of plaintiffs' Complaint in response to paragraph 50.

**36.**

Mr. Esayian states that the allegations in paragraphs 51 through 53 consist of legal arguments and legal conclusions that do not call for a response. Mr. Esayian further denies that plaintiffs are entitled to any damages arising out of this Complaint. Mr. Esayian denies the remaining allegations of paragraphs 51 through 53.

<u>**COUNT II**</u>
**(Breach of Employee Confidentiality Agreement as to Defendants Bassano, Bovey, Esayian, Komacki, Sweeney, Yankow and Doe Defendants 1-20)**

**37.**

Mr. Esayian incorporates his responses to the foregoing paragraphs of plaintiffs' Complaint in response to paragraph 54.

**38.**

Mr. Esayian admits that he signed a Confidentiality Agreement with OIA Global but denies that he breached any obligation contained therein. Mr. Esayian further states that the Confidentiality Agreement speaks for itself and therefore he neither admits nor denies plaintiffs' conclusions and characterizations of it as found in paragraph 55. Mr. Esayian is without knowledge as to the remaining allegations in paragraph 55 and therefore denies same.

**39.**

Mr. Esayian further states that the Confidentiality Agreement speaks for itself and therefore he neither admits nor denies plaintiffs' conclusions and characterizations of it as found in paragraph 56. Mr. Esayian is without knowledge as to the remaining allegations in paragraph 56 and therefore denies same.

**40.**

Mr. Esayian denies the allegations of paragraph 57.

## <u>COUNT III</u>

**(Breach of Employee Handbook, Acknowledgment as to Defendants Bassano, Bovey, Oliver Burke, Komacki, Rizzo, Sweeney and Doe Defendants 1-20)**

**41.**

To the extent Count III applies to him, Mr. Esayian is without knowledge as to the allegations in paragraphs 58 through 60 and therefore denies same.

///

///

## COUNT IV
### (Breach of Duties of Loyalty, Confidentiality and Good Faith and Fair Dealing as to All Defendants and Doe Defendants 1-20)

### 42.

Mr. Esayian incorporates his responses to the foregoing paragraphs of plaintiffs' Complaint in response to paragraph 61.

### 43.

Mr. Esayian denies the allegations of paragraphs 62 through 63.

## COUNT V
### (Conversion as to all Defendants and Doe Defendants 1-20)

### 44.

Mr. Esayian incorporates his responses to the foregoing paragraphs of plaintiffs' Complaint in response to paragraph 64.

### 45.

Mr. Esayian denies the allegations of paragraph 65.

### 46.

Except as expressly admitted above, Mr. Esayian denies each and every allegation in plaintiffs' Complaint and the whole thereof. Mr. Esayian further denies that plaintiffs are entitled to the relief sought in its Prayer for Relief.

///

///

## AFFIRMATIVE DEFENSES

Without assuming plaintiffs' burden of proof on any issue, Mr. Esayian sets forth the following affirmative defenses:

### FIRST AFFIRMATIVE DEFENSE
### (Fails to State a Claim)

### 47.

Plaintiffs' Complaint fails to state any claim upon which relief may be granted.

### SECOND AFFIRMATIVE DEFENSE
### (Estoppel)

### 48.

Plaintiffs induced Mr. Esayian to perform working on their behalf after his last day in the office, knowing he would need to access certain OIA Global materials in order to do so, and further enjoyed the benefit of Mr. Esayian's work on their behalf. Plaintiffs should now be estopped from complaining that Mr. Esayian acted as directed and for their benefit.

### THIRD AFFIRMATIVE DEFENSE
### (Unclean Hands)

### 49.

Plaintiffs' claims for equitable relief are barred by the doctrine of unclean hands because they induced Mr. Esayian to perform work on plaintiffs' behalf following his last day in the office, knowing he would need to access certain OIA Global materials in order to do so, and further enjoyed the benefit of Mr. Esayian's work which was solely for plaintiffs' benefit. Plaintiffs' conduct in bringing this lawsuit is so wrongful as to preclude any right for it to enforce any obligations against Mr. Esayian or seek damages from him.

## FOURTH AFFIRMATIVE DEFENSE
### (Attorney Fees)

**50.**

Mr. Esayian is entitled to reasonable attorney fees under ORS 20.105 in response to plaintiffs' assertion of claims against Mr. Esayian for which there is no objectively reasonable basis.

## FIFTH AFFIRMATIVE DEFENSE
### (Ratification)

**51.**

Plaintiffs ratified any conduct that may have been improper under the terms of an agreement between Mr. Esayian and OIA Global or in violation of any OIA Global policy by asking him to continue working on OIA Global's behalf, approving his conduct, and accepting the benefit of his actions. OIA Global cannot now complain about actions that Mr. Esayian took on their behalf.

## SIXTH AFFIRMATIVE DEFENSE
### (Waiver)

**52.**

Plaintiffs waived their right to challenge Mr. Esayian's decision to retain certain limited documents following his last day of work by asking him to continue working on those matters and accepting the benefit of his actions.

///

///

## SEVENTH AFFIRMATIVE DEFENSE
### (Reservation of Rights)

**53.**

Mr. Esayian reserves his right to amend as provided by the civil rules, including but not limited to, his right to move the Court to amend his Answer in order to assert additional defenses as may become known to him during the course of discovery.

**FOR DEFENDANT ESAYIAN'S COUNTERCLAIMS,** Mr. Esayian alleges as follows:

## <u>FACTUAL ALLEGATIONS</u>

**54.**

Prior to his resignation, Mr. Esayian held the position of Manager of Sustainability and Global Business Process. His responsibilities included designing, developing and implementing a sustainability program at OIA Global as well as providing process and system support for customs brokerage operations, freight forwarding operations, and client-facing account management. Mr. Esayian reported to Bill Brady, Director of Compliance.

**55.**

Mr. Esayian gave notice of his intent to resign his position with OIA Global on December 4, 2020. He offered two weeks of notice, through Friday December 18, 2020, to allow time to transition his duties.

**56.**

Unexpectedly, OIA Global's Human Resources personnel advised Mr. Esayian that his last day would be December 15, 2021. Human Resources personnel also required Mr. Esayian to turn in his OIA Global equipment on December 15, 2021.

**57.**

During this time, because of the COVID-19 pandemic and related social distancing

protocols, staffing in the office was scheduled to ensure social distancing. This, combined with

on-going business, client and internal scheduling demands, made it difficult for Mr. Esayian to

complete the transition of work to other key employees.

**58.**

Additionally, at the time of his resignation, Mr. Esayian was in the process of completing

several major projects, most notably, an audit of OIA Global's carbon emissions calculations and

an associated written case study for eventual publication by Smart Freight Centre for the benefit

of OIA Global. Mr. Esayian anticipated the work would be complete before his final workday

with OIA.

**59.**

Unfortunately, Mortiz Tolke, the auditor for Smart Freight Centre, the organization

conducting the audit, had additional follow up questions to discuss with Mr. Esayian but was not

available to meet with him until December 16, 2021.

**60.**

Mr. Esayian possessed unique knowledge about the methodology and technical elements

of the project, as it was his concept. No other OIA Global employee could provide Mr. Tolke

with the information he needed to complete the audit.

**61.**

Mr. Esayian advised Mr. Brady that he was not able to talk to Mr. Tolke prior to

December 15, 2021. Mr. Esayian advised Mr. Brady that he was willing to talk to Mr. Tolke after

December 15, 2021. Mr. Brady accepted the benefit of Mr. Esayian's offer.

**62.**

Consequently, Mr. Esayian worked on OIA Global's behalf and answered the auditor's questions even though human resources had required him to turn in his equipment.

**63.**

In order to respond to Mr. Tolke's questions in an informed manner, Mr. Esayian forwarded emails related to the audit. One email in particular contained example API call files. These files are anonymized data call and return sets from and to the OIA Global system and the Ecotransit server which computes CO2e data. Ecotransit is a SAAS company based in Hannover, Germany, which calculates multi-modal shipment Scope 3 emissions according to the GLEC Framework of emissions methodologies, a concept and product developed by the Smart Freight Centre. The API files, which contain only anonymized generic shipment number, weight, origin, destination and mode data used only for CO2 calculations, were used by Mr. Tolke to validate OIA Global's alignment with the GLEC Framework and thus were critical to the audit.

**64.**

Because he had the necessary information, Mr. Esayian was able to have the follow up conversation with Mr. Tolke and ensure that the audit could be completed successfully. Mr. Esayian deleted the emails related to that topic immediately after his conversation with Mr. Tolke.

**65.**

Mr. Esayian also did not have a chance to meet with Matthew Crouch, his replacement, prior to December 15, 2020 regarding several critical projects that Mr. Crouch was assuming.

**66.**

Mr. Crouch now holds the position of Director of Global Services and Sustainability.

Page 15  -    DEFENDANT CHRISTOPHE ESAYIAN'S ANSWER, AFFIRMATIVE DEFENSES
AND COUNTERCLAIMS TO PLAINTIFFS' COMPLAINT

**67.**

Mr. Esayian worked closely with Mr. Crouch over the years, as Mr. Crouch was the account manager on the account which precipitated OIA Global's decision to engage Mr. Esayian to improve its sustainability practices. This account required OIA Global to complete a detailed "sustainability questionnaire" as part of its bid process, and Mr. Esayian successfully developed a sustainability program to ensure OIA Global's continued eligibility to bid.

**68.**

Mr. Esayian needed to educate Mr. Crouch regarding specific aspects of the sustainability program to ensure OIA Global's continued ability to bid on work for this significant account.

**69.**

Additionally, as part of Mr. Esayian's work on behalf of OIA Global and continued innovation in its emissions programs, Mr. Esayian developed sustainability partnerships, including a partnership with the sustainability manager at United Airlines. This partnership was a key part of OIA Global's validation effort as required by the Smart Freight Centre, allowing the two companies to compare emission calculations to ensure best practices and accurate data collection. Mr. Esayian needed to explain this process to Mr. Crouch to ensure OIA Global's continued success in sustainability practices.

**70.**

Also, as part of the partnership with United Airlines, United Airlines asked Mr. Esayian to participate in its "Eco-Skies alliance." Mr. Esayian needed to explain the program and process to Mr. Crouch so that OIA Global could participate.

**71.**

Mr. Esayian also learned just prior to his resignation about a bid proposal solicited by the warehousing team that provided an important opportunity to quantify energy savings into Scope 2 emissions savings. Mr. Esayian immediately realized the value of the reduction in Scope 2 emissions for OIA Global and, most particularly, for clients such as Mr. Crouch's client who had strong sustainability requirements. Mr. Esayian needed to explain to Mr. Crouch how to use this information when responding to the sustainability questionnaire during the bid process.

**72.**

Mr. Esayian and Mr. Crouch tried to meet several times prior to December 15, 2020 but were not able to coordinate a meeting time. Mr. Crouch asked Mr. Esayian if he would be amenable to providing Mr. Crouch with the relevant information after December 15, 2020. Mr. Esayian agreed to do so, but Mr. Esayian needed documentation with the specifics of the projects to discuss and inform Mr. Crouch. Mr. Esayian selected a few key emails that contained in the information necessary for Mr. Esayian to explain the information to Mr. Crouch and forwarded them to his personal email.

**73.**

At Mr. Crouch's request, Mr. Esayian held several conversations with Mr. Crouch after Mr. Esayian left OIA. In these calls Mr. Crouch discussed the topics described above, as well as the Smart Freight Centre audit, how to best prepare for the upcoming bid, and the reporting system Mr. Esayian developed for Scope 3 emissions. Mr. Esayian also assisted Mr. Crouch through the data gathering process used to re-validate OIA Global's U.S. EPA Smartway certification.

**74.**

While most of the communication with Mr. Crouch occurred in December of 2020, Mr. Crouch continued to ask Mr. Esayian for assistance with OIA Global work in January, April and September of 2021.

**75.**

The confidential information Mr. Esayian retained and accessed to have meaningful conversations with Mr. Tolke and Mr. Crouch was retained solely to benefit OIA and the emails were deleted immediately after the specific conversations ended. Mr. Esayian estimates that the emails he forwarded to himself containing confidential information were deleted within one or two weeks of December 15, 2020. Mr. Esayian's later communications with Mr. Crouch did not require access to any specific data or email.

**76.**

Mr. Esayian estimates he spent approximately 8 to 10 hours in conversations with Mr. Tolke and Mr. Crouch which were solely for OIA Global's benefit and for which he did not receive any compensation.

**FIRST COUNTERCLAIM**
**(Unpaid Wages and Penalties Pursuant to ORS 652.140 and ORS 652.150)**

**77.**

Mr. Esayian realleges and incorporates by reference paragraphs 48 through 69 as if fully stated herein.

**78.**

OIA Global suffered and permitted Mr. Esayian to work on its behalf and enjoyed the benefits of that work.

**79.**

Mr. Brady, a managerial agent of OIA Global, authorized and encouraged Mr. Esayian's work on behalf of OIA Global.

**80.**

Mr. Crouch, a managerial agent of OIA Global, initiated, authorized and encouraged Mr. Esayian's work on behalf of OIA Global.

**81.**

OIA Global did not provide Mr. Esayian with any compensation for the work performed by Mr. Esayian from December 16, 2020 to September of 2021.

**82.**

Mr. Esayian estimates that he worked eight to 10 hours on behalf of OIA Global for which he received no compensation. OIA Global owes Mr. Esayian an amount to be proven at trial but estimated to be approximately $4,038.50 in unpaid wages.

**83.**

OIA Global's failure to pay Mr. Esayian all wages earned at the time it terminated his employment violated ORS 652.140.

**84.**

Mr. Esayian is entitled to a penalty equal to 30 days' wages in the amount of $12,115.50 pursuant to ORS 652.150.

**85.**

Mr. Esayian is entitled to prejudgment interest from the date his wages became due and owing.

**86.**

Mr. Esayian has hired legal counsel to prosecute his claims and is entitled to his reasonable attorney's fees and costs incurred pursuant to ORS 652.200.

**SECOND COUNTERCLAIM**
**(Unjust Enrichment)**
**Plead in the Alternative**

**87.**

Mr. Esayian realleges and incorporates by reference paragraphs 48 through 79 as if fully stated herein.

**88.**

Mr. Esayian agreed to provide services to OIA Global at OIA Global's request.

**89.**

OIA Global is now seeking damages from Mr. Esayian for acts Mr. Esayian took solely to assist Mr. Esayian in providing the services requested by OIA Global.

**90.**

OIA Global's initiation of litigation in this circumstance is wrongful and inequitable.

**91.**

Mr. Esayian would not have agreed to provide services to OIA Global if OIA Global had not induced him to do so, and would not have retained any documents had OIA Global not induced him to continue performing services on its behalf.

**92.**

OIA Global has been unjustly enriched by the value of Mr. Esayian's work on its behalf.

**93.**

Mr. Esayian is entitled to compensation for the work he performed on OIA Global's behalf in the amount of $2,500 (10 hours of his time at his standard rate of $250.00 per hour).

**94.**

Because of OIA Global's wrongful conduct, Mr. Esayian has also suffered out of pocket damages in the form of attorney's fees required to respond to this frivolous and unjust lawsuit.

**95.**

OIA Global should be required to pay all damages incurred by Mr. Esayian as a direct result of OIA Global's request to Mr. Esayian to perform services on its behalf and his act of doing so.

**THIRD COUNTERCLAIM**
**(Equitable Estoppel)**

**96.**

Mr. Esayian realleges and incorporates by reference paragraphs 48 through 88 as if fully stated herein.

**97.**

Mr. Esayian agreed to provide services to OIA Global at OIA Global's request.

**98.**

Mr. Esayian reasonably relied on OIA Global's request that he perform services and its knowledge that he needed information contained in OIA Global documents in order to perform those services in deciding to email confidential OIA Global information from his work email to his personal email.

**99.**

Mr. Esayian would hot have agreed to provide services to OIA Global if OIA Global had not induced him to do so, and would not have retained any confidential information had OIA Global not induced him to continue performing services on its behalf.

**100.**

Mr. Esayian has and will continue to suffer damage if OIA Global is permitted to now contradict the information provided to Mr. Esayian nearly one year ago and claim that Mr. Esayian engaged in unlawful conduct when he performed as OIA Global requested.

**101.**

Mr. Esayian is entitled to compensation for the damages he has sustained due to OIA Global's unlawful conduct, notably the economic losses he has sustained due to attorney's fees he is required to pay to respond to this frivolous and unjust lawsuit.

WHEREFORE, having fully answered plaintiffs' Complaint and having stated his defenses, Mr. Esayian respectfully requests the following relief:

1. For judgment against plaintiffs on all claims for relief;

2. Judgment against plaintiffs on Mr. Esayian's counterclaims in an amount to be proven at trial;

3. For all wages and associated penalties and interest due to Mr. Esayian;

4. Judgment against plaintiffs for Mr. Esayian's reasonable attorneys' fees, expert fees, and costs; and

5. For such other relief as the Court deems just and equitable.

DATED: December 6, 2021          BUCHANAN ANGELI ALTSCHUL &
                                 SULLIVAN, LLP

                                 /s/ Kristine Lambert
                                 Courtney Angeli, OSB No. 941765
                                 E-mail: courtney@baaslaw.com
                                 Kristine Lambert, OSB No. 010684
                                 E-mail: kristine@baaslaw.com
                                 Telephone: (503) 974-5020
                                 Attorneys for Defendant
                                 Christophe Esayian

## CERTIFICATE OF SERVICE

I hereby certify that I served the foregoing DEFENDANT CHRISTOPHE ESAYIAN'S

ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS TO PLAINTIFFS'

COMPLAINT on the following named person(s) on the date indicated below by

☐    mailing with postage prepaid

☐    hand delivery

☐    facsimile transmission

☐    overnight delivery

☒    Email

☒    notice of electronic filing using the CM/ECF system


Philip M. Guess
Elizabeth H. White
Alicia J. LeDuc
K&L Gates LLP
One SW Columbia Street, Suite 1900
Portland, OR  97204
Phone: (503) 228-3200
philip.guess@klgates.com
elizabeth.white@klgates.com
alicia.leduc@klgates.com


DATED: December 6, 2021          BUCHANAN ANGELI ALTSCHUL &
                                 SULLIVAN, LLP

                                 /s/ Kristine Lambert
                                 Courtney Angeli, OSB No. 941765
                                 E-mail: courtney@baaslaw.com
                                 Kristine Lambert, OSB No. 010684
                                 E-mail: kristine@baaslaw.com
                                 Telephone: (503) 974-5020
                                 Attorneys for Defendant
                                 Christophe Esayian


Page 1   -   CERTIFICATE OF SERVICE