IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| OREGON INTERNATIONAL AIRFREIGHT CO., an Oregon corporation; OIA Global LOGISTICS-SCM, INC., an Oregon Corporation, | Case No. 3:21-cv-01480-SB **FINDINGS AND RECOMMENDATION** |
| Plaintiffs, | |
| v. | |
| HEIDI BASSANO; MARIE BOVEY; LLOYD BURKE; OLIVER BURKE; CHRISTOPHE ESAYIAN; KIMBERLY KOMACKI; MICHAEL LEHNERT; RAUL LUCENA; MIKE RIZZO; TODD SWEENEY; WILLIAM YANKOW; and DOES 1-20, | |
| Defendants. | |

**BECKERMAN, U.S. Magistrate Judge.**

Plaintiffs Oregon International Airfreight Co. and OIA Global Logistics-SCM, Inc.

(together, "OIA Global") filed a complaint against several former employees alleging

misappropriation of OIA Global's confidential information and asserting several causes of

action. Self-represented defendant Raul Lucena ("Lucena") moved to dismiss the case against

him for lack of personal jurisdiction. (ECF No. 54.) The Court has jurisdiction over this matter

PAGE 1 – FINDINGS AND RECOMMENDATION

pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1367. For the reasons explained below, the Court recommends that the district judge deny Lucena's motion to dismiss.

## BACKGROUND

OIA Global is a third-party logistics operator with its headquarters in Oregon. (Compl. ¶¶ 22, 24.) In late 2020, a competitor began to hire several employees away from OIA Global, and OIA Global alleges that at least eleven departing employees, including Lucena, took confidential company information with them to their new employer. (*Id*. ¶¶ 46-49.) OIA Global alleges that Lucena sent a detailed spreadsheet with OIA Global's customer and pricing information to his private email account the day following receipt of an offer to join the competitor. (*Id*. ¶ 48(h).) OIA Global also alleges that while Lucena was still an employee, he corresponded with the same competitor regarding "FDA" codes to aid in converting a client from OIA Global to the competitor. (*Id*.)

In his motion to dismiss, Lucena asserts that during the time he worked for OIA Global, he worked out of an office in Chicago, Illinois, he never reported directly to anyone in Oregon, he has never been to Oregon, and he was not aware that OIA Global's servers or information technology staff were located in Oregon. (Decl. of Raul Lucena ("Lucena Decl.") ¶¶ 2-4, ECF No. 54-7, 8.) OIA Global responds with testimony that its servers are located in Beaverton, Oregon, and that Lucena had routine contact with Oregon through his daily use of OIA Global's email systems, intranet, and other electronic business operations, all of which he could not access without undergoing an authentication process on OIA's Oregon-based servers. (Decl. of Jim Scott ("Scott Decl.") ¶¶ 3-8.) When Lucena logged in to his OIA Global email account allegedly to send himself a spreadsheet of confidential information and to correspond with a competitor regarding FDA codes, OIA Global's servers located in Oregon necessarily authenticated his log-ins. (*Id*. ¶¶ 5-8.) OIA Global also submitted evidence that Lucena reported indirectly to OIA

PAGE 2 – FINDINGS AND RECOMMENDATION

Global managers located in Oregon; OIA Global's Oregon headquarters issued Lucena's paychecks; and Lucena submitted three dozen requests for help to OIA Global's IT support team located in Portland, Oregon. (Decl. of Ingrid Pablo ¶¶ 5-6; Scott Decl. ¶¶ 5-13.)

## DISCUSSION

## I.    STANDARD OF REVIEW

"Where a defendant moves to dismiss a complaint for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that jurisdiction is appropriate." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004) (citing *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990)). When resolving a Rule 12(b)(2) motion without an evidentiary hearing, the court need "only inquire into whether the plaintiff's pleadings and affidavits make a prima facie showing of personal jurisdiction." *Id.* (quoting *Caruth v. Int'l Psychoanalytical Ass'n*, 59 F.3d 126, 128 (9th Cir. 1995)). "Although the plaintiff cannot 'simply rest on the bare allegations of its complaint,' uncontroverted allegations in the complaint must be taken as true" and "[c]onflicts between parties over statements contained in affidavits must be resolved in the plaintiff's favor." *Id.* (simplified).

## II.    ANALYSIS

In his motion to dismiss, Lucena argues that this Court lacks personal jurisdiction over him due to his lack of contacts with Oregon. For the reasons discussed below, the Court finds that OIA Global has met its burden of demonstrating the Court's personal jurisdiction over Lucena.

### A.    Personal Jurisdiction Test

Federal district courts "ordinarily follow state law in determining the bounds of their jurisdiction over [a defendant]." *Picot v. Weston*, 780 F.3d 1206, 1211 (9th Cir. 2015) (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014)). "Oregon law authorizes personal jurisdiction

over defendants to the full extent permitted by the United States Constitution." *Ranza v. Nike, Inc*., 793 F.3d 1059, 1068 (9th Cir. 2015) (citation omitted). The Court must therefore inquire whether its exercise of jurisdiction over Lucena would "comport[ ] with the limits imposed by federal due process." *Id*. (quoting *Daimler*, 571 U.S. at 125).

"Due process requires that the defendant 'have certain minimum contacts' with the forum state 'such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Picot*, 780 F.3d at 1211 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). "The strength of contacts required depends on which of the two categories of personal jurisdiction a litigant invokes: specific jurisdiction or general jurisdiction." *Ranza*, 793 F.3d at 1068 (citation omitted). Here, OIA Global asserts only specific jurisdiction.

The Ninth Circuit employs the following three-prong test to determine if a defendant has sufficient minimum contacts to be subject to specific personal jurisdiction: "(1) [t]he non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e., it must be reasonable." *Picot*, 780 F.3d at 1211 (quoting *Schwarzenegger*, 374 F.3d at 802). "The plaintiff bears the burden of satisfying the first two prongs of the [specific jurisdiction] test." *Morrill v. Scott Fin. Corp*., 873 F.3d 1136, 1142 (9th Cir. 2017) (quoting *Schwarzenegger*, 374 F.3d at 802). If the plaintiff is successful in doing so, the burden of satisfying the third prong shifts to the defendant, who "must present a compelling case that the presence of some other

considerations would render jurisdiction unreasonable." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 477 (1985).

### B.    Specific Jurisdiction Test

#### 1.    Prong One

Under the first prong of the specific jurisdiction test, OIA Global must demonstrate that Lucena purposefully directed his activities toward Oregon or purposefully availed himself of the privilege of conducting activities in Oregon. OIA Global has satisfied both tests.

The Ninth Circuit recently instructed that the Supreme Court's purposeful direction test set forth in *Calder* "makes more sense when dealing with out of forum tortfeasors," and the Supreme Court's purposeful availment test set forth in *Paccar* "is the proper starting place where an intentional tort is committed within the forum state." *Freestream Aircraft (Bermuda) Ltd. v. Aero Law Grp.*, 905 F.3d 597, 606 (9th Cir. 2018) (citing *Calder v. Jones*, 465 U.S. 783, 791 (1984) and *Paccar Int'l, Inc. v. Com. Bank of Kuwait, S.A.K.*, 757 F.2d 1058 (9th Cir. 1985)). In other words, tortious conduct committed outside the forum state but having an effect within the forum state requires application of *Calder*'s "effects test," while tortious conduct committed within the forum state is better suited for *Paccar*'s purposeful availment test. *See id.* at 603.

##### a.    Purposeful Availment

OIA Global alleges that Lucena misappropriated confidential information from OIA Global's private company servers, which were located in Oregon during the relevant time period. Lucena asserts that he has never been to Oregon, and did not know OIA Global's servers are located in Oregon. (Def.'s Mot. to Dismiss at 4.) In a factually similar case, U.S. District Judge Michael Simon recently concluded that the purposeful availment test is the appropriate test to apply under these circumstances.

///

PAGE 5 – FINDINGS AND RECOMMENDATION

In *Climax Portable Machine Tools, Inc. v. Trawema GmbH*, No. 3:18-cv-1825-AC, 2020 WL 1304487 (D. Or. Mar. 19, 2020), the plaintiff alleged that former employees misappropriated confidential information from the plaintiff's servers located in Oregon while the employees were located in Germany. Judge Simon recognized that "[g]iven the Ninth Circuit's guidance in *Freestream Aircraft*, the threshold question is whether part of the alleged tortious conduct occurred in Oregon" and, if so, "the *Paccar* purposeful availment analysis is appropriate, and not the effects test under *Calder*." *Id.* at *3 (citing *Freestream Aircraft*, 905 F.3d at 606, and noting that the Ninth Circuit was clear in *Freestream Aircraft* that "for the *Paccar* analysis to apply, the alleged tortfeasor need not be present in the forum state").

In *Climax*, as here, the plaintiff company alleged that at all relevant times it maintained the allegedly misappropriated confidential information on its servers located in Oregon, and the defendant employees misappropriated confidential information from the servers to use in a competitive enterprise. *Id.* at *4. Unlike here, however, the individual defendants in *Climax* admitted they knew the plaintiff's server was located in Oregon. *Id.*; *see* Lucena Decl. ¶¶ 2-4 (stating Lucena did not know the location of OIA Global's servers, where his paychecks came from, or that OIA Global's IT staff was located in Oregon). However, OIA Global has submitted evidence that Lucena accessed OIA Global's Oregon servers on an almost daily basis as an OIA Global employee, and asserts that Lucena knew "full well that OIA Global's business operations, servers, and other functions were headquartered in Oregon after six years of employment." (Pls.' Resp. at 5, noting that Lucena "has provided no evidence to the contrary beyond his own statements"). Notably, Lucena does not deny that he knew OIA Global's headquarters are located in Oregon. In any event, because the Court must resolve any conflicts over statements contained in declarations in the plaintiff's favor, the Court resolves this factual dispute in favor

of concluding that Lucena was aware that he was accessing information located in Oregon. *See Schwarzenegger*, 374 F.3d at 800; *see also NetApp, Inc. v. Nimble Storage, Inc.*, 41 F. Supp. 3d 816, 826 (N.D. Cal. 2014) (exercising personal jurisdiction over defendant in Australia who allegedly accessed servers in California, despite the defendant's affidavit stating that he "never knew that the systems he accessed were in California").

Evaluating similar facts, Judge Simon noted in *Climax* that "[t]he question for jurisdiction purposes . . . is whether that alleged act constituted committing a tort 'in Oregon' or the tort of misappropriation in Germany, with an effect in Oregon." *Id.* at *4. Judge Simon concluded "that the better analysis is that it was a tort that was at least in part committed in Oregon, even though the [d]efendants were not physically present in Oregon, and thus falls under the 'purposeful availment' *Paccar* analysis." *Id.* Judge Simon cited several other cases in which courts have found that acquisition of confidential information "from a server in the forum state with knowledge of its location, or other intentional and knowing improper use of a computer server in the forum state, creates enough minimum contacts to support personal jurisdiction, without analyzing the effects test." *Id.* at *5 (citing *Intercon, Inc. v. Bell Atl. Internet Sols., Inc.*, 205 F.3d 1244, 1248 (10th Cir. 2000); *Vivint, Inc. v. Bailie*, No. 2:15-CV-685-DAK, 2017 WL 396655, at *3 (D. Utah Jan. 30, 2017); *Rhapsody Sols., LLC v. Cryogenic Vessel Alts., Inc.*, No. H-12-1168, 2013 WL 820589, at *5 (S.D. Texas Mar. 5, 2013); and *NTE LLC v. Kenny Constr. Co.*, 1:14-cv-09558, 2015 WL 6407532, at *4 (N.D. Ill. Oct. 21, 2015)).

Applying *Paccar*, Judge Simon found that the individual defendants in *Climax* had "sufficient minimum contacts with Oregon to support personal jurisdiction." *Id.* at *6. So too here.

///

PAGE 7 – FINDINGS AND RECOMMENDATION

b.      **Purposeful Direction**

Judge Simon further held in *Climax* that "[a]s an alternative basis for jurisdiction, assuming all of the alleged underlying tortious conduct is considered outside Oregon, with only an effect felt in Oregon, and the purposeful direction test therefore applies, the Court still has personal jurisdiction over the Individual Defendants." *Id.* (noting that "[u]nder the purposeful direction test, 'the defendant allegedly must have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state'" (quoting *Yahoo!, Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1206 (9th Cir. 2006)). For the same reasons, if *Calder*'s effects test applies here, it also supports personal jurisdiction.

Specifically, in *Climax*, like here, the plaintiff company alleged that the defendant employees intentionally accessed the plaintiff's servers in Oregon to obtain confidential information for an unauthorized purpose, and therefore the defendants' conduct was aimed at Oregon. *Id.* at *7 (noting that "[s]ome courts expressly have applied the effects test in considering conduct similar to the alleged conduct and have found it sufficient to support personal jurisdiction" (citing *NetApp, Inc.*, 41 F. Supp. 3d at 825-27)); *see also Fluke Elecs. Corp. v. CorDEX Inst. Inc.*, No. C12-2082JLR, 2013 WL 566949, at *4 (W.D. Wash. Feb. 13, 2013) ("The allegations in this case are that Defendants accessed [the plaintiff's] proprietary information and trade secrets while they . . . were employed at [the plaintiff] and later used this information to wrongfully compete with and inflict damage upon [the plaintiff]. Defendants['] alleged actions were not merely contacts that could have foreseeable effects in Washington; they were intentional and aimed at a specific Washington company."); *Sky Cap. Grp., LLC v. Rojas*, No. 1:09-CV-00083-EJL, 2009 WL 1197956, at *5 (D. Idaho Apr. 30, 2009) (finding that the defendants expressly aimed their conduct at the forum state, because "[r]egardless of whether the

PAGE 8 – FINDINGS AND RECOMMENDATION

Defendants had actual knowledge of where [the plaintiff's] servers were located, the Defendants' prior employment dealings with [the plaintiff] evidences that they knew [the plaintiff] to be located in Idaho"). Here, Lucena has not denied that he knew the headquarters of OIA Global—his employer of more than six years—are located in Oregon.

Further, like here, the *Climax* defendants allegedly engaged in the challenged acts with the intent to misappropriate confidential information to aid a competitive entity, and it was therefore "reasonable that they would know this would harm Plaintiff in the forum state." *Climax*, 2020 WL 1304487, at *7; *see also Fluke Elecs.*, 2013 WL 566949, at *7 ("The Ninth Circuit has 'repeatedly held that a corporation incurs economic loss, for jurisdictional purposes, in the forum of its principal place of business.'" (quoting *CollegeSource, Inc., v. AcademyOne, Inc.*, 653 F.3d 1066, 1077 (9th Cir. 2011))).

For these reasons, Judge Simon concluded that "all three prongs of the effects test are met and the Court finds enough minimum contacts related to the Individual Defendants." *Climax*, 2020 WL 1304487, at *7. The same analysis and conclusion applies here, and the Court finds that OIA Global has satisfied the *Calder* effects test. *See also Panavision Int'l v. Toeppen*, 141 F.3d 1316, 1322-24 (9th Cir. 1998) (affirming personal jurisdiction over an individual who registered internet domain names trademarked to companies with a principal place of business in California, and rejecting the defendant's argument that his actions were not purposefully directed toward California because the injury occurred in cyberspace); *Facebook, Inc. v. ConnectU LLC*, No. C 07-01389, 2007 WL 2326090, at *6 (N.D. Cal. Aug. 13, 2007) (finding personal jurisdiction over out-of-state parties who accessed Facebook because they specifically directed actions toward the website, even if those parties did not know Facebook's physical location, where "there [wa]s no dispute that [the defendants] were fully aware that Facebook existed, and

that they specifically targeted their conduct against Facebook" and "remaining ignorant of Facebook's precise location may render this case factually distinct from prior precedents finding jurisdiction for acts of express aiming, but not in a manner that warrants a different result").

### 2.    Prong Two

"The second requirement for the court to exercise specific personal jurisdiction 'is that the claim asserted in the litigation arises out of the defendant's forum related activities.'" *Adidas Am., Inc. v. Cougar Sport*, 169 F. Supp. 3d, 1092 (D. Or. 2016) (quoting *Panavision*, 141 F.3d at 1322). "The Ninth Circuit applies a 'but for' test under which the court must determine whether the plaintiff would not have suffered injury 'but for' the defendant's forum-related conduct." *Id.*

The Court finds that but for Lucena's alleged access of OIA Global's servers in Oregon to obtain confidential information (i.e., Lucena's forum related activity), OIA Global would have suffered no injury and would have no claim against Lucena. Accordingly, OIA Global has satisfied the second prong of the specific jurisdiction test.

### 3.    Prong Three

Under the third prong of the specific jurisdiction test, the exercise of jurisdiction must also "comport with fair play and substantial justice." *Burger King*, 471 U.S. at 476. Once the plaintiff demonstrates minimum contacts, "a rebuttable presumption arises that the exercise of jurisdiction is reasonable." *Climax*, 2020 WL 1304487, at *7 (quoting *Sinatra v. Nat'l Enquirer, Inc*., 854 F.2d 1191, 1195 (9th Cir. 1988)). Lucena "must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King*, 471 U.S. at 477.

To determine if a defendant has presented a "compelling case" that exercising jurisdiction would be unreasonable, courts consider seven factors: "(1) the extent of the defendants' purposeful injection into the forum state's affairs; (2) the burden on the defendant of defending

in the forum; (3) the extent of the conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum." *CollegeSource,* 653 F.3d at 1079 (quoting *Dole Food Co. v. Watts*, 303 F.3d 1104, 1114 (9th Cir. 2002)). Lucena focuses on the first two factors, arguing that he has done nothing that qualifies as purposeful injection into the forum state's affairs and that he lacks the financial means to defend himself in this forum. (*See* Lucena Decl. ¶¶ 3-4, 7.)

With respect to the extent of Lucena's purposeful injection into the forum state's affairs and whether Oregon has an interest in adjudicating this dispute, Judge Simon noted that similar alleged conduct in *Climax* was "a significant purposeful injection into Oregon's affairs, and Oregon has a significant interest and adjudicating this dispute." *Climax*, 2020 WL 1304487, at *7 (citing *NetApp*, 41 F. Supp. 3d at 828 and *MacDermid, Inc. v. Deiter*, 702 F.3d 725, 730-31 (9th Cir. 2012)); *see also MacDermid*, 702 F.3d at 731 ("[E]fficiency and social policies against computer-based theft are generally best served by adjudication in the state from which computer files have been misappropriated.").

Turning to the burden on Lucena, the Court does not minimize the burden of federal court litigation on out-of-state litigants, especially self-represented litigants. However, the burden is diminished because the "conveniences of modern communication and transportation ease what would have been a serious burden only a few decades ago." *Climax*, 2020 WL 1304487, at *7 (finding that it was not unreasonable for former employees located in Germany to litigate in Oregon federal court) (citation omitted); *see also Yahoo!*, 433 F.3d at 1211 (finding personal jurisdiction over an individual defendant located in France); *NetApp, Inc.*, 41 F. Supp. 3d at 824-

25 (finding personal jurisdiction over a defendant in Australia who was never physically present in the forum state, and rejecting the self-represented defendant's argument that representing himself would be too burdensome as a result of his location). Indeed, courts' ability to accommodate out-of-state litigants' requests to appear by video, as well as parties' ability to conduct depositions by video, have improved substantially in recent years as a result of the COVID-19 pandemic.

With respect to the remaining factors, there is no evidence that proceeding in this district will raise a potential conflict with Lucena's home state of Illinois; this district provides an efficient and convenient forum to adjudicate this dispute in light of the number of witnesses and evidence located here; and the availability of an alternative forum is not relevant because this forum is reasonable.

Lucena has not presented a compelling case that any of the relevant factors support a finding that personal jurisdiction is unreasonable here. *See Climax*, 2020 WL 1304487, at *8 ("Defendants have not provided a compelling case that some other factor supports a finding that personal jurisdiction is unreasonable. The Court therefore concludes that personal jurisdiction over the Individual Defendants is reasonable in this case."). Accordingly, the district judge should deny Lucena's motion to dismiss for lack of personal jurisdiction.

## CONCLUSION

For the reasons stated, the Court recommends that the district judge DENY Lucena's motion to dismiss for lack of personal jurisdiction (ECF No. 54).

## SCHEDULING ORDER

The Court will refer its Findings and Recommendation to a district judge. Objections, if any, are due within fourteen (14) days. If no objections are filed, the Findings and Recommendation will go under advisement on that date. If objections are filed, a response is due

PAGE 12 – FINDINGS AND RECOMMENDATION

within fourteen (14) days. When the response is due or filed, whichever date is earlier, the

Findings and Recommendation will go under advisement.

DATED this 16th day of May, 2022.

HON. STACIE F. BECKERMAN
United States Magistrate Judge

PAGE 13 – FINDINGS AND RECOMMENDATION